# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TONYA EVETTE RHODES,

     Appellant,

       v.

DEPARTMENT OF VETERANS
   AFFAIRS,

     Agency.

DOCKET NUMBER
AT-0752-12-0316-X-1

DATE: July 18, 2016

# THIS ORDER IS NONPRECEDENTIAL[*]

<u>Tonya Evette Rhodes</u>, Brandon, Florida, pro se.

<u>Kristin Langwell</u>, Esquire, St. Petersburg, Florida, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## ORDER

¶1     The administrative judge issued a compliance initial decision finding the agency noncompliant with the March 15, 2013 initial decision in the underlying removal appeal. *Rhodes v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-12-0316-C-1, Compliance Initial Decision (CID) (Dec. 10, 2013);

---

[*] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Compliance File (CF), CID, Tab 11, On April 13, 2015 and September 25, 2015, we issued nonprecedential orders finding the agency in partial compliance. *Rhodes v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-12-0316-X-1, Order (Apr. 13, 2015) and Order (Sept. 25, 2015); Compliance Referral File (CRF), Tabs 5, 12. On December 17, 2015, we issued an order for the agency to show cause why sanctions should not be imposed due to its failure to comply with the September 25, 2015 order. CRF, Tab 15. For the reasons discussed below, we decline to impose sanctions, find the agency in further partial compliance, and order the agency to take appropriate action to bring itself into full compliance.

**DISCUSSION OF ARGUMENTS AND EVIDENCE OF COMPLIANCE**

¶2 On March 15, 2013, the administrative judge issued an initial decision reversing the appellant's removal and requiring the agency to restore her, effective February 15, 2012. *Rhodes v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-12-0316-I-1, Initial Decision (Mar. 15, 2013); Initial Appeal File (IAF), Tab 47, Initial Decision at 16. The decision required the agency to pay her appropriate back pay and benefits. *Id.* Neither party filed a petition for review, and the initial decision became the final decision of the Board.

¶3 Following the appellant's petition for enforcement, the administrative judge found the agency in noncompliance with the initial decision. CF, Tab 11, CID. The administrative judge held that the agency failed to explain adequately its back pay calculations, including how it calculated the back pay period and interest amounts. CID at 3. The administrative judge further held that the agency failed to provide evidence to show that it made appropriate transfers to the appellant's Thrift Savings Plan (TSP) account and Federal Employees' Group Life Insurance (FEGLI). *Id.* Finally, the administrative judge found that the agency admitted it may have erroneously submitted a debt notice to the Office of Personnel Management (OPM) regarding the appellant's Federal Employees

Health Benefits (FEHB) plan and had not provided evidence that it corrected such error. *Id.* Neither party filed a petition for review.

¶4 On April 13, 2015, the Board issued a nonprecedential order finding the agency in noncompliance and ordering it to submit additional evidence. CRF, Tab 5. On September 25, 2015, the Board issued a second nonprecedential order that found the agency compliant on some issues and noncompliant on others. CRF, Tab 12. The Board ordered the agency to submit the following information:

1. Evidence that it paid the appropriate amount of interest on the 30 hours of overtime pay. This evidence shall include a narrative explanation of how the interest was calculated.

2. An explanation regarding whether the optional FEGLI contribution of $48.36 was properly withheld and, if it was not, evidence that this amount was refunded, with interest. The interest calculation must be supported by a narrative explanation.

3. Evidence that the agency deposited the appropriate TSP contributions into the appellant's TSP account and that the account was credited with appropriate breakage.

4. Evidence that the agency expressly notified the appellant of the amount owed for retirement contributions and her options with regard to seeking waiver of this debt.

5. Evidence that the agency paid the appropriate amount of interest on the $793.92 refunded for FEHB premiums erroneously withheld during the back pay period. This evidence shall include a narrative explanation of how the interest was calculated.

6. A narrative explanation regarding how the FEHB premiums erroneously withheld between April 1, 2012, and May 5, 2013, were applied to the appellant's outstanding annual leave debt. This explanation must explain, at a minimum, which pay periods were affected by the erroneous withholdings; the amount

erroneously withheld in each pay period; when amounts were credited against the annual leave debt, and how much; and how much annual leave debt remains outstanding. The narrative explanation must be supported by documentary evidence.

CRF, Tab 12 at 10‑11.

¶5 Following this order and the December 17, 2015 Order to Show Cause (discussed below), both parties filed submissions. CRF, Tabs 14, 17–20, 23–29. For the reasons discussed below, we find the agency in compliance on four of the six outstanding issues and order it to submit evidence of compliance with the remainder.

## ANALYSIS

¶6 When the Board finds a personnel action unwarranted or not sustainable, it orders that the appellant be placed, as nearly as possible, in the situation she would have been in, had the wrongful personnel action not occurred. *House v. Department of the Army*, 98 M.S.P.R. 530, ¶ 9 (2005). The agency bears the burden to prove its compliance with a Board order. An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011). The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued noncompliance." *Brown v. Office of Personnel Management*, 113 M.S.P.R. 325, ¶ 5 (2010).

Interest on the 30 Hours of Overtime Pay

¶7 In our September 25, 2015 order, we found that the agency had correctly paid back pay and interest with the exception of interest owed on 30 hours of overtime that the appellant would have worked during the back pay period. CRF, Tab 12 at 5. We ordered the agency to submit its interest calculations and evidence of payment. *Id.* at 10.

¶8    On February 10, 2016, the agency submitted its interest calculations and stated that it had sent the appellant a check for the appropriate amount. CRF, Tab 24 at 4–5, 9–11. The appellant did not contest the calculations, but stated that she had not received the check because the agency sent it to the wrong address. CRF, Tab 25 at 3, Tab 26 at 4. The agency subsequently sent a second check to the address provided by the appellant. CRF, Tab 28 at 5. The appellant filed a response to the agency's pleading but did not further address this issue. CRF, Tab 29. We therefore find the agency in compliance on this issue.

Federal Employees' Group Life Insurance

¶9    In our September 25, 2015 order, we found that the agency appeared to have improperly withheld $48.36 from the appellant's back pay for FEGLI contributions. We ordered the agency to determine if this amount was properly withheld and, if it was not, to refund it with interest. CRF, Tab 12 at 10.

¶10    On December 30, 2015, the agency submitted evidence that it had refunded the $48.36 to the appellant along with $4.91 in interest. CRF, Tab 18 at 21–22. The appellant did not challenge this evidence. We therefore find the agency in compliance on this issue.

Thrift Savings Plan

¶11    In our September 25, 2015 order, we found the agency failed to show that it had deposited the 1% TSP contribution in the appellant's TSP fund or that the appellant had been credited with the appropriate breakage. CRF, Tab 12 at 7.

¶12    On February 10, 2016, the agency submitted evidence that it had submitted the appropriate amount to the TSP and that the TSP had credited it to the appellant's account, with breakage. CRF, Tab 24 at 21. The appellant did not challenge this evidence. We therefore find the agency in compliance on this issue.

¶13    The appellant complained that she was not able to withdraw funds from her TSP account because the agency had reported her as an "active participant."

CRF, Tab 29 at 3. The appellant's difficulties with the TSP are unfortunate, but they are beyond the scope of this enforcement matter because they do not appear to relate to the agency's back pay obligations stemming from the March 15, 2013 order. The appellant will have to address these issues through other channels.

Waiver Notice for Debt Generated by Lack of Retirement Contributions

¶14     In our April 13, 2015 order, we found that the agency satisfactorily explained that the appellant owed a debt for retirement contributions that the agency erroneously failed to deduct from her back pay payment. CRF, Tab 5 at 9. In our September 25, 2015 order, we found that the agency had failed to submit evidence that it provided her any applicable notice and opportunity to request waiver of this debt mandated by her collective bargaining agreement. CRF, Tab 12 at 8‑9.

¶15     On February 10, 2016, the agency submitted a copy of the waiver notice it had sent the appellant on April 25, 2014. CRF, Tab 24 at 27–29. The appellant apparently did not receive the notice because it was sent to the wrong address. CRF, Tab 25 at 3. The agency contended that its provision of the notice in its pleading corrected this deficiency. CRF, Tab 26 at 5.

¶16     We disagree. Although the letter directs the appellant to consult the attached instructions titled "Requesting a Waiver," the agency did not submit such an attachment as part of its pleading. Without seeing the waiver instructions, we cannot say that the appellant has received any notice mandated by her collective bargaining agreement. Nor can we be confident that there is no detriment to the appellant from the late provision of such notice. For example, there may be a deadline to request waiver that has long since passed due to the agency's failure to send the notice to the correct address. We therefore order the agency to send a new copy of the complete waiver letter and notice, dated the day it is sent, to the appellant's current address, and to submit evidence that it has done so.

Interest on Federal Employees Health Benefits Premiums Refunded

¶17     In our September 25, 2015 order, we instructed the agency to file evidence that it had paid the appropriate amount of interest on the $793.92 the agency refunded the appellant for FEHB premiums erroneously withheld during the back pay period.  CRF, Tab 12 at 11.  On December 30, 2015, the agency submitted a response asserting that it did not owe interest because it refunded the FEHB premiums in the same pay period in which it withheld them.  CRF, Tab 18 at 7. The appellant did not challenge this assertion.  Accordingly, we find the agency compliant on this issue.

FEHB Premiums Withheld after the Back Pay Period

¶18     In our September 25, 2015 order, we held that the agency failed adequately to explain whether and how it refunded the $4,366.56 it owed the appellant for FEHB premiums erroneously withheld between April 1, 2012, and May 5, 2013 ($198.48 per pay period x 22 pay periods).  CRF, Tab 12 at 9.  Although the agency claimed that it had credited the full amount to the appellant's outstanding annual leave debt, its documents appeared to show that the agency had credited $176.91 per pay period for 16 pay periods ($2,830.56), leaving it $1,536.00 short. CRF, Tab 12 at 9 (discussing agency evidence).  We ordered the agency to explain this discrepancy. *Id*. at 11.

¶19     Despite the Board's clear instructions, the agency still has not submitted a comprehensible explanation.  Its December 30, 2015 submission purports to address this issue but does not provide a detailed narrative explanation, or indeed any real explanation at all.  CRF, Tab 18 at 7–8.  The documentation purporting to show that the debt was canceled in full merely provides the same information that we found in our previous order to be inadequate and inaccurate.  *Id*. at 40-43.  This is unacceptable.  Moreover, the appellant asserts that OPM continues to garnish her monthly annuity in the amount of $176.91.  CRF, Tab 19 at 9.  Perhaps not coincidentally, this is the exact amount the agency claimed it

credited her in each pay period—which, as explained above and in our previous order, would fall short by $1,536.00 even if the agency indeed paid the amounts it claims to have paid.

¶20 We therefore find the agency noncompliant on this issue and order it to submit a full and detailed narrative account, with supporting documentation, explaining how it refunded the $4,366.56 it owed the appellant. The documents must show that the appellant received the appropriate amount and that OPM is not garnishing her annuity for this improperly assessed debt.

December 17, 2015 Order to Show Cause

¶21 On December 17, 2015, after the agency failed to submit biweekly responses (or any responses) as required by our September 25, 2015 order, we ordered the agency and the responsible agency official to show cause why we should not impose sanctions. CRF, Tab 15. Pursuant to 5 U.S.C. § 2304(e)(2)(A) and 5 C.F.R. § 1201.183(c), the Board has authority to impose sanctions against the agency official responsible for noncompliance with a Board order.

¶22 On December 30, 2015, the agency and the responsible agency official filed responses, contending that sanctions should not be imposed because then-agency counsel had been experiencing a serious, life-threatening medical condition and had recently suffered a loss in her immediate family, and due to these stresses had inadvertently overlooked the September 25, 2015 order. CRF, Tab 17 at 4–5. The agency subsequently submitted biweekly updates and evidence of partial compliance, as detailed above. In light of the serious nature of the difficulties experienced by then-agency counsel, coupled with the agency's subsequent successful attempts to show partial compliance, we find that sanctions are not warranted and decline to impose them.

Further Actions Needed for Compliance

¶23     Within **21 calendar days** of the date of this Order, the agency shall submit the evidence required on the debt waiver and FEHB premium issues discussed above. *See supra* ¶¶ 14-16, 18-20.

¶24     If the agency's submission does not fully address all required issues, the agency shall submit **biweekly reports** detailing its progress and efforts until full compliance is achieved. If the agency fails to submit the required information or the biweekly reports, then the Board again may issue an order to show cause why sanctions should not be imposed against the responsible agency official pursuant to 5 U.S.C. § 2304(e)(2)(A) and 5 C.F.R. § 1201.183(c).

¶25     The appellant shall file a response within **14 calendar days** of the agency's submission. The appellant shall file a response within **14 calendar days** to any biweekly report filed by the agency that contains substantive evidence of compliance (as opposed to merely a progress report). Failure to submit responses within the required time period may cause the Board to assume the appellant is satisfied and dismiss the petition for enforcement.


FOR THE BOARD:                          _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.